IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

3:18 pm, 2/5/10

Tim J. Ellis
Clerk of Court

In re                                           )
                                                )
    KIRBY D. PETERSON,           )   Case No. 09-20566
                                                )   CHAPTER 11
        Debtor.              )

## MEMORANDUM OPINION

On November 9, 2009, this matter came before the Court for hearing on the Involuntary Petition filed by Wyo. Country Builders ("WCB") and the response filed by Kirby D. Peterson. The matter was initially taken under advisement, but due to subsequent events, the Court rescheduled the hearing for January 11, 2010. WCB also filed an Involuntary Petition naming Melanie M. Peterson as a Debtor, Case No. 09-20567. These two cases will be considered together. Melanie M. Peterson and Kirby D. Peterson, although debtors in separate cases, will be referred to collectively as "Debtors." The parties were represented as stated on the record.

These involuntary petitions were originally scheduled for evidentiary hearings on August 20, 2009. However, upon requests from both parties due to the unavailability of either counsel or the parties, the hearings were continued numerous times. Subsequently, matters arose which caused additional delay in the Court's disposition of the matter: (1) the Debtors were ordered to comply with the requirements of Rule 1003(b);[1] and, (2) the

---

[1] Fed. R. Bankr. P. 1003(b) states, in part, "If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with

Court sustained the Debtors' objection to WCB's request to use deposition testimony at the November 9, 2009 hearing as the Debtors were not provided reasonable notice of the depositions. The Court allowed the depositions to be rescheduled upon providing reasonable notice to the Debtors. Upon review of the file, testimony and evidence presented at the hearings, the Court is now prepared to rule.

The Court has jurisdiction under 28 U.S.C. §§1334 and 157(a).[2] This is a core proceeding under 28 U.S.C. §157(b)(2). Petitioning creditors bring these actions under 11 U.S.C. §303.[3]

**Facts**

WCB filed Involuntary Petitions on June 17, 2009 against each of the individuals named above.[4] WCB alleged that the nature of the claim was a contract in the amount of $73,426.38. Debtors filed a "Response to Involuntary Petition" on July 15, 2009.

---

the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof."

[2]Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

[3]An involuntary bankruptcy case is commenced by: "three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount... if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;"

[4]Involuntary cases may not be commenced against a husband and wife, jointly, since a "person" may be the subject of an involuntary case. Married couples do not constitute a person. Joint involuntary cases are unavailable even when both spouses are indebted to the same creditor. Involuntary cases brought separately against each spouse may be jointly administered. Am. Jur. 2d Section 1006 on Bankruptcy.

At the hearing on November 9, 2009, WCB argued that the Court could not proceed with the hearing on the basis the Debtors had not complied with Fed. R. Bankr. P. 1003(b). WCB argued that it could not determine if there were additional eligible creditors based upon the Debtors' refusal to disclose. Fed. R. Bankr. P. 1003(b) implements a portion of the §303(c) joinder provisions. After an involuntary petition is filed but before a case is dismissed or relief is ordered, any other creditor with a non-contingent, unsecured claim may join in the petition with the same effect as if such joining creditor were a petitioning creditor in the original petition. Rule 1003(b) requires that a bankruptcy court pause before a hearing on the merits of an involuntary petition to assure that other creditors have "reasonable opportunity" to exercise their §303(c) statutory power to join as petitioners when an alleged debtor's answer to the petition filed by fewer than three petitioners assert that the petition fails the three-petitioner requirement for debtors with 12 or more creditors.[5] As stated, the Debtors refused to disclose their creditors, even upon admitting they had more than 12 creditors. The Debtors attempted to waive this requirement at the hearing. However, parties cannot confer subject matter jurisdiction upon the bankruptcy court by waiver.[6] Therefore, only after the Court ordered compliance with the Bankruptcy Rule did the Debtors file the list on November 20, 2009. The Debtors allege that the claims are all in dispute and the

---

[5] *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057 (9th Cir. 2002).

[6] *In re Alta Title Company*, 55 B.R. 133 (Bankr. D. Utah 1985).

Page 3

petitioning creditors do not have standing to bring involuntary bankruptcy petitions.

**Discussion**

There is a two part analysis in determining whether creditors may commence an involuntary bankruptcy. The bankruptcy court must determine: (1) whether the creditors have standing; and, (2) that the debtor generally has not been paying his debts as they become due.[7]

Under § 303(b)(1), a petitioning creditor does not have standing if its debt is subject to a bona fide dispute. In the Tenth Circuit, a bona fide dispute is whether there is an objective basis for either a factual or legal dispute as to the validity of the debt. The bankruptcy court does not determine the probable outcome of the dispute, but merely whether one exists.[8]

I. Status of Wyoming Country Builders, LLC as a Petitioning Creditor.

WCB and Melanie Peterson were involved in a real estate development venture. This appears to have been an informal arrangement as the parties did not enter into a written contract. Mrs. Peterson sold modular homes to prospective buyers. Mrs. Peterson was the Vice President of Timberline Lodge, Inc. Timberline Lodge Inc. was a dealer for All American Homes. All American Homes manufactured modular homes. The evidence shows that Mr. Peterson had minimal active involvement in the real estate venture. He

---

[7] *Bartmann v. Marverick Tube Corp. et al.*, 853 F.2d (10th Cir. 1988).

[8] *Bartmann* at 1544.

was a grantor on the real property that was part of the matter in dispute.

WCB was to prepare the home site and to do construction on the modular home, including, but not limited to: foundation, electrical hookup, septic system installation, and other work requested by a buyer, such as building a garage. The property at the heart of this dispute is the Alton property. The dispute resulted in two civil actions being commenced in the Ninth Judicial District, Fremont County, Wyoming.[9]

There is some confusion as to the amount that WCB alleges that it is owed. The initial complaint filed in the state district court alleged the amount of $65,000. Mr. Lookingbill testified at the November 9, 2009 hearing, that the actual amount owed is $73,426.38. Mr. Lookingbill and Mrs. Peterson did agree that Mr. Lookingbill had been paid $50,000.

Mr. Lookingbill's argument partly relies upon the Affidavit of Melanie Peterson ("Affidavit").[10] Upon review of the testimony and the Affidavit, the Court does not find the Affidavit to be all that clear as to the amounts agreed upon between the parties and amounts billed, paid or still in dispute. Mrs. Peterson testified that WCB is not owed any amount above the $50,000 already paid, as she paid for part of the materials originally allocated to WCB; had to have the sewer and cistern systems re-constructed for which

---

[9](1) *Wyo. Country Builders, LLC vs Kirby Peterson and Melanie Peterson*, Civil Action No. 35632, filed June 15, 2007; and, (2) *Melanie Peterson and Shannon Alton v Tim Lookingbill*, Civil Action No. 37007, filed June 24, 2009.

[10]The Affidavit was submitted as part of the state court proceedings. Plaintiff's Exhibit 2 in this proceeding.

Page 5

WCB is liable; and, questioned the accuracy of the invoices submitted to her for payment from WCB.

A petitioning creditor has the burden of establishing that its claim is not in dispute Once the petitioning creditor establishes a prima facie case that its claim is not subject to a bona fide dispute, the burden shifts to the debtor to present evidence of a bona fide dispute.[11]

The testimony and evidence presented shows the Court that there are numerous disputes between the parties, including: whether Mr. Lookingbill was to be paid on a cost plus percentage for profit basis or if the price he quoted was a fixed bid; whether Mr. Lookingbill would be compensated for additional expenses due to the owner's requested changes; which party was liable for some listed expenses; and, whether the invoices provided by Mr. Lookingbill to Mrs. Peterson were in dispute. Based upon the testimony and evidence, the Court finds the WCB's claim is disputed.

---

[11]*Bartmann*, citing *In re Garland Coal & Mining Co.*, 67 B.R. 514 (Bankr. W.D. Ark, 1986) and *In re Tikijian*, 76 B.R. 304 (Bankr. S.D.N.Y. 1987). (the debtor must present proof of a bona fide dispute once the burden shifts because otherwise, any debtor could defeat an involuntary petition...by merely asserting that a bona fide dispute exists. Under this objective approach, the debtor's subjective intent does not control whether a claim is considered to be subject to a bona fide dispute.)

II. Status of Boardwalk Construction as a Petitioning Creditor.[12]

Boardwalk Construction (Boardwalk) was added as a petitioning creditor.[13] Debtors objected. According to the testimony of Mr. Cal Kirkum ("Kirkum"), he was appointed general contractor after Mrs. Peterson was removed from the job. Mr. Kirkum understood that there was a balance owed to Boardwalk for work initiated before the spilt. Mr. Kirkum submitted a bill to Mrs. Peterson. She disputed the invoice amounts and refused to pay the invoice. Mr. Kirkum also testified that there were other issues. He alleged: All American Homes paid for installing the heating system although the bill should have been paid by Mrs. Peterson; Mrs. Peterson did not have the foundation completed which cause adverse effects on the home with water and dirt damages; and, other contractors were not paid. Mr. Kirkum testified that he "is not interested in pursuing the claim," but contends that Mrs. Peterson owes him. Mr. Kirkum also testified that his contract was with Timberline Inc. Mr. Kirkum's testimony established that the claim between Boardwalk and the Debtors is in dispute as to liability and amount.

III. Status of Teton Orthopaedics as a Petitioning Creditor.

Teton Orthopaedics was added as a petitioning creditor and Debtors objected.

---

[12]*Vortex Fishing* at 1062. After an involuntary petition is filed but before a case is dismissed or relief is ordered, any other creditor with a non-contingent, unsecured claim may join in the petition with the same effect as if such joining creditor were a petitioning creditor in the original petition. 11 U.S.C. 303(c).

[13]Fed. R. Bankr. P. 1003(d) does not specify the form of pleading or paper required to effect joinder. *In re Alta Title Company*, 55 B.R. 133 (Bankr. D. Utah 1985).

Page 7

According to the testimony, Mrs. Peterson had surgery which resulted in the claim. Mrs. Peterson's insurance company only allowed a certain amount for specific services and refused to pay the total amount of the claim. Mrs. Peterson testified that this claim was the insurance company's debt for her surgery and she was "not going to pay it." The Court finds Mrs. Peterson admitted that services were provided to her, but there appears to be a dispute between Mrs. Peterson and the insurance company, not Teton Orthopaedics. Therefore the claim between Mrs. Peterson and Teton Orthopedics is undisputed.

IV. Status of Bridgeport Financial as a Petitioning Creditor

Bridgeport Financial ("Bridgeport") was added as a petitioning creditor and the Debtors objected. This appears to be a medical debt incurred in California. The claim was turned over to collection. Mrs. Peterson testified that although she lived in California for a period of time, she is not aware of the identity of this debt or her liability to this claim. The claim is in dispute.

V. Status of R.S. Bennett Construction as a Petitioning Creditor

R.S. Bennett Construction ("Bennett Construction") was added as a petitioning creditor by the Motion to Join filed on January 7, 2010. The Court allowed the testimony of the petitioning creditor at the January 9, 2010 hearing for the purpose of judicial economy. Eric Bennett testified that Bennett Construction finished excavation work on a project and charged Mrs. Peterson the amount of $2,700. Mr. Bennett testified that he

another contractor as the work was not done properly. The petitioning creditor has the burden of establishing that its claim is undisputed. Mr. Bennett's testimony did not meet the burden.

## VI. Status of B & G Plumbing as a Petitioning Creditor

B & G Plumbing ("B&G") was added as a petitioning creditor by the Motion to Join on January 7, 2010. Again, the Court allowed the testimony of the petitioning creditor at the January 9, 2010 hearing for the purpose of judicial economy. Ms. Uselman testified that B&G was hired by Mrs. Peterson, but she did not know if the bill had been paid. The testimony does not establish that the claim is undisputed.

## VII. Status of the Bankruptcy Estate of Jean Uselman as a Petitioning Creditor

At the hearing, counsel for all petitioning creditors alleged that the Bankruptcy Estate of Jean Uselman intended to join the petition for involuntary petition. Ms. Uselman was in Jackson, Wyoming and prepared to testify at the hearing by video conference. For the purpose of judicial economy, the Court allowed her to testify.[14] The Debtors had the opportunity to cross examine. Ms. Uselman purchased a modular home through Mrs. Peterson. Ms. Uselman testified that the cost of the property was much higher than was quoted. Due to these higher costs, Ms. Uselman was forced to file for bankruptcy protection. Ms. Uselman testified that Timberline Inc. was the seller on the purchase agreement and all checks that she saw from the bank were payable to

---

[14] A Motion to Join was filed on January 18, 2010, requesting that the bankruptcy estate of Jean Uselman join as a petitioning creditor.

Timberline Inc. The Court finds that Timberline Inc. is not a debtor in this petition for involuntary bankruptcy. It appears to the Court that there is a dispute as to liability on the claim.

Conclusion of Status of Petitioning Creditors

The court finds that the claim for Teton Orthopaedics is the only undisputed claim of the petitioning creditors and has standing. As the Debtors have more than 12 creditors, the Bankruptcy Code requires that there be three petitioning creditors with standing to proceed in an involuntary bankruptcy. The three petitioning creditors standing requirement has not been. As the first part of the two part analysis in determining whether creditors may commence an involuntary bankruptcy has failed, the Court will not address whether the Debtors were paying their debts as they become due. The Court will enter a judgment by separate order, dismissing the involuntary bankruptcy petitions.

DATED this 5 day of February, 2010

BY THE COURT

_____
United States Bankruptcy Judge

Service to:
    Vance Countryman
    Ken McCartney